## PARMLEY et al. v. AYNESWORTH.
### No. 816.

Court of Civil Appeals of Texas. Eastland.
March 13, 1931.

Rehearing Denied April 24, 1931.

Clyde E. Thomas and Martelle McDonald, both of Big Spring, for appellants.

James Spiller, of Panhandle, Tracy Smith, of Big Spring, and Hiram K. Aynesworth and Joseph H. Aynesworth, both of Stinnett, for appellee.

LESLIE, J.

Joseph H. Aynesworth instituted this suit against W. A. Farrar, Dr. L. E. Parmley, First State Bank of Panhandle, Beulah E. Chumbley and husband, Robert E. Chumbley, to recover judgment on a vendor's lien note for $2,500 executed by Farrar, and a $3,840 personal note executed by Dr. L. E. Parmley. For a valuable consideration the two notes had been assigned to the plaintiff by Beulah E. Chumbley, the former wife of Dr. L. E. Parmley. The possession and right to the first note was awarded by the judgment to said Farrar, the maker, who, the jury found, purchased it from the pledgee bank, and a judgment was awarded to plaintiff Aynesworth for the balance of the $3,840 note, although the jury failed to find that said Farrar purchased that note also along with the $2,500 note, as he contended. The Chumbleys were dismissed from the suit, and the bank was awarded the sum of money tendered into court by Farrar as the balance on his personal note executed to the bank for the purpose of taking up or paying off Mrs. Chumbley's note, for which the two above notes were placed with the bank as collateral. An appeal is prosecuted from the above judgment by Farrar, Parmley, and the bank.

The plaintiff Aynesworth complains that the court erred: (1) In overruling his motion for an instructed verdict, based principally on the ground that the evidence conclusively showed that Farrar was endeavoring to purchase his own note for less than one-half of its real value; and (2) that the court erred in submitting any issue whatever to the jury, since, under the undisputed testimony, all issues became immaterial, and the plaintiff was entitled to a verdict generally, less the amount paid by Farrar when he purported to take up the Chumbley note.

By cross-assignments Farrar, who sued for the right and possession of both collateral notes, attacks that portion of the judgment adverse to him on the grounds: (1) That the court having submitted certain issues to the jury, which answered some of them favorable to him, and failed to agree upon answers to other issues, the court was without authority to enter its independent judgment on the issues unanswered by the jury; (2) where one purchases a note containing a collateral clause empowering the holder to sell the collateral, the purchaser of the note receives all rights under such clause, together with the lien therewith, including the collateral security; and (3) that the plaintiff, assignee of the collateral notes, was not entitled to recover on same without tendering the unpaid portion of the Chumbley note, to secure which the collateral was pledged to the bank.

Farrar, by proper pleadings, among other things, alleged: (1) That he bought the two collateral notes, and that they were sold to him by the bank under the power of sale contained in a clause of Mrs. Parmley's note. That clause, in part, reads: "Now, in the event of the non-payment of this note at maturity, the holders hereof are * * * in-

vested with * * * authority to use, transfer, hypothecate, sell or convey the same property or any part thereof * * * at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holders hereof may deem best * * * and the proceeds of such sale * * * shall be applied to the payment of this note. * * * The surplus, if any, after payment of this note, together with all charges above stated, shall be paid to the drawer of this note. * * *" And (2) Farrar pleaded in the alternative that if he did not buy the collateral notes, as alleged in his first count, that he then acquired the Chumbley note and thereby became entitled to the two collateral notes as security for the same.

·It was further alleged by Farrar that he acquired the Chumbley note in this way; that after it and the two collateral notes had become due and were unpaid, and at a time when the first note amounted to $1,381.84, he, by paying that amount (part of which he borrowed from the bank, with L. E. Parmley as surety), became entitled, under his agreement with the bank, to the two collateral notes, purchasing them outright; and that it was agreed then and there by the bank and himself that the two notes should remain in the bank as collateral for an independent loan made to him. These allegations are denied by the bank, which contends that it at no time sold the collateral notes to said Farrar.

In answer to the special issues submitted the jury found: (1) That Farrar, on July 16, 1929, purchased the $2,500 note from the bank; (2) the jury failed to agree on an answer to a like question concerning the $3,-840 note; (3) that the reasonable value of the $2,500 vendor's lien note was $2,500; (4) that the balance due on the $3,840 note was $2,880.

From the foregoing it is evident that Farrar's contention addressed to the action of the trial court in rendering judgment for the plaintiff Aynesworth for the balance of the $3,840 note on an issue submitted to the jury, but unanswered by it, must be sustained, provided the issue was a material one raised by the testimony and pleadings. In other words, the court in such cases is powerless to decide an issue so submitted and which the jury fails or is unable to answer. Gulf C. & S. F. Ry. Co. v. Saunders (Tex. Civ. App.) 286 S. W. 919; Dugger v. Allen (Tex. Civ. App.) 233 S. W. 343; Texas Brewing Co. v. Meyer (Tex. Civ. App.) 38 S. W. 263; Smith v. Pitts, 57 Tex. Civ. App. 97, 122 S. W. 46; Jaco et al. v. W. A. Nash Co. et al. (Tex. Civ. App.) 269 S. W. 1089; Lakewood Heights Co. v. McCuistion (Tex. Civ. App.) 226 S. W. 1109; Dato v. George W. Armstrong & Co. (Tex. Com. App.) 260 S. W. 1024. In such cases the trial court should declare a mistrial. Dato v. George Armstrong & Co., supra. However, we think the first and second issues

just mentioned were immaterial, and therefore should not only have been disregarded by the trial court, but should be so treated by· this court. Magnolia Petroleum Co. v. Connellee (Tex. Com. App.) 14 S.W.(2d) 1020. Vaughn v. Central State Bank (Tex. Civ. App.) 27 S.W.(2d) 1112(5).

To correctly reflect the issues, some additional facts disclosed by the testimony must be stated. In a divorce proceeding between Dr. L. E. Parmley and his wife, Beulah E. Parmley, the settlement of their property rights resulted in a transfer to her of the title and possession of the $2,500 note, 'together with the execution to her by Dr. L. E. Parmley of his personal note for $3,840, payable in installments of $80 per month, the first installment falling due November 1, 1927. The $2,500 note was secured by a first lien on the west 1/2 of section No. 86, block M, ·E. L. & R. R. Co. survey, Dawson county, Tex. Mrs. Parmley, who later married Robert Chumbley, before such second marriage, borrowed from the First State Bank of Panhandle $1,150, executing her promissory note to the bank for that amount. To secure the same she delivered the $2,500 note to the bank, and the $3,840 note was also delivered to the bank, with authority to collect the monthly installments and apply same to her personal note. Under the pleadings and the testimony it is believed that both such notes may be regarded as having been placed with the bank as collateral security for the Mrs. Chumbley note. There seems to be no dispute about this fact.

The pleadings and testimony on the part of the defendant Parmley were in harmony with the contention advanced by the defendant Farrar. Whatever the transaction at the time Farrar paid the $1,381.84 and borrowed $1,-000 from the bank, executing his note therefor, that ·negotiation did in fact result in the delivery by the bank of the Chumbley note to said Farrar, but the bank did not deliver the two collateral notes to Farrar, but retained possession of the same, and according to the contentions of Farrar and Parmley, as heretofore stated, they were continued with the bank as collateral security for the $1,000 note. At the trial below the bank tendered the $2,500 note into court, and asked the court to dispose of it to the rightful owner, and further stated that it had theretofore delivered the $3,840 note to the plaintiff merely on the condition and for the purpose of allowing collection to be made on same. This note was also tendered into court in so far as the bank was able to do so, and for the same purpose as in the case of the other note.

When the $1,000 note became due, Farrar offered to pay the same, provided the two collateral notes were surrendered to him upon the agreement which he alleges herein. This the bank refused to do. Consequently,

when the plaintiff Aynesworth entered this suit to recover on the two notes, less the amount of the Chumbley note, the defendant Farrar answered, tendering into court the amount of his $1,000 note, and asked the court to adjudge him the rightful owner and entitled to the possession of the two collateral notes, on the theory that he bought them outright from the bank. His alternative plea has heretofore been stated.

We are unable to give any effect to Farrar's contention, based upon the theory that he purchased the $2,500 collateral note from the bank. He was the maker of that note. There was no dispute about the amount due thereon. The jury found it was worth $2,500. The testimony conclusively shows that it had a very much greater value. Farrar himself testified: "My note that was attached to the Beulah E. Chumbley note is worth twenty-six or twenty-seven or twenty-eight hundred dollars."

In defendant Farrar's pleadings he alleged: "The vendor's lien note for the sum of $2500.-00, together with interest and attorney's fees thereon, is of the value of $3,250.00, and the other collateral security note for the principal sum of $3840.00 is of the value, after credits for payments thereon have been made to which the bank is entitled, of the sum of $3000.00."

If Farrar's contentions are true, he was purchasing for $1,381.84 his note for less than one-half of its value, to say nothing of the other note valued by him at $3,000 in his pleadings.

■ Had Farrar gone to the owner of the $2,500 note and proposed to buy it from him for $1,381.84, or any other sum less than its face value, the owner, had he accepted it, would not have been bound by such an agreement, and he could have enforced payment in full. As said in Williston on Contracts, vol. 1, p. 257, § 120: "Accordingly, the agreement of the creditor to discharge the whole debt then and there due, in consideration of the payment of part, is unsupported by a valid consideration." The text cites many cases as authority for the statement, among them two from Texas. Simmons Hardware Co. v. Adams (Tex. Civ. App.) 147 S. W. 1196; Bergman Produce Co. v. Brown (Tex. Civ. App.) 156 S. W. 1102. To these we add Silvers Box Corporation v. Boynton Lbr. Co. (Tex. Civ. App.) 297 S. W. 1059.

If Farrar was thus unable to purchase his note for such a consideration from the owner thereof, it is equally clear that he would be unable to buy it from the bank for the consideration named. Such a transaction would not bind the rightful owner of the note.

For another valid reason Farrar was unable to purchase his note under the circumstances pleaded by him. As said in Llano Granite & Marble Co. v. Hollinger (Tex. Com. App.) 212 S. W. 151, 153: "The rule seems to be well settled that a pledgee holding a promissory note or chose in action as collateral security is not authorized to compromise with the person liable thereon and accept less in discharge or satisfaction of the debt than the actual amount due." Citing numerous authorities, to which may be added: Moses v. Grainger, 106 Tenn. 7, 58 S. W. 1067, 53 L. R. A. 857; Peacock v. Phillips, 247 Ill. 467, 93 N. E. 415, 32 L. R. A. (N. S.) 42; Aulwes v. Farmers' Bank, 44 S. D. 92, 182 N. W. 528; 49 C. J. p. 952, § 111; 21 R. C. L. 32.

In the well-known work on Collateral Securities by Colebrook, § 96, the rule is thus stated: "The pledgee of negotiable securities as collateral security is not permitted, in the absence of special agreement, in his dealings with the securities, to accept anything less in discharge or satisfaction of them, from the parties bound, than the face value of such paper. * * * Any arrangement whereby the securities are transferred for less than is due thereon to a party already bound for the full amount, is a compromise, notwithstanding a power of sale has been given by the contract of pledge."

From the authorities it is obvious that the very transaction, by which Farrar alleges that he acquired by purchase his own note for $2,500, is condemned as an unlawful compromise by the pledgee, in this case the bank, and the original obligor, Farrar himself. His contention that he purchased the note must fall.

■ It is equally as well settled that, where notes held as collateral are surrendered to the maker by the pledgee at a sum considerably less than their face value, the pledgor has his election to bring an action against the pledgee in tort for wrongfully disposing of the collateral, or against the maker to recover the residue of the face of the notes so surrendered. De Clark v. Waters, 10 Wyo. 31, 65 P. 855.

■ Further, we think there is to be found in the opinion of Vaughn v. Central State Bank (Tex. Civ. App.) 27 S.W.(2d) 1112, substantial authority for the disposition we shall make of this appeal. As there stated, it may here be stated, also, that the doctrine applicable to the facts of the instant case is stated in 21 R. C. L. p. 675, § 37, as follows: "The primary duty of the pledgee is to return the article pledged to the pledgor, immediately upon the performance of the obligation for which the security was given, or on tender of such performance, and his refusal so to do amounts to a wrongful conversion. And, since the pledgee impliedly agrees faithfully to hold the pledge until the conditions have been performed upon the faith of which the choses in action, goods, or personal

chattels have been delivered to him, the rule is general, if not universal, that the wrongful or unauthorized disposition of pledged property by the pledgee or his agent so as to put it out of his power to redeliver it on payment of the debt which it secures is a conversion for which an action will lie."

So applying the law to the facts of the instant case, we hold that W. A. Farrar, in paying to the First State Bank of Panhandle the amount due on the Chumbley note, discharged that note, and at the same time the two collateral notes here involved were by the same act discharged from the original incumbrance, and Mrs. Chumbley or her assignee became entitled to the return thereof. Our conclusion as a matter of law that Farrar paid the Mrs. Chumbley note, and thereby released the collateral security, is arrived at on the ground that he either purchased her note or paid it. By the allegations of his petition he did not purchase it, thus conclusively establishing the only other alternative, that he paid it. His testimony stoutly supports said allegations.

As further stated in 21 R. C. L. p. 680, § 41: "* * * When, however, the principal debt has been paid or proper tender made, the property (the pledge) is discharged out of the incumbrance, and the pledgor or his assignee is entitled to the return of the property pledged or to retain the same if already in his possession." In 49 C. J. p. 970, § 177, the rule is stated in substantially the same language, and to it is added this: "Where the pledgee realizes enough from a portion of the collaterals to pay the principal debt, his interest in the remaining collaterals is extinguished." This is especially pertinent in determining the correct disposition to be made of the balance due on the $3,840 note.

██ Of course, it must be borne in mind that we are here dealing with a situation in which the maker of the collateral note is endeavoring to acquire the same for less than its admitted value. In such a case it was the duty of the bank to at least exercise ordinary care to collect the collateral notes, or a sufficient amount thereof to satisfy the Chumbley note. The bank could not have compromised the vendor's lien note with Farrar to the detriment of the plaintiff, had it attempted to do so. The bank having collected from Farrar a sufficient sum to satisfy its claim against Mrs. Chumbley, it thereafter held the Farrar note, credited with such payment, in trust for Mrs. Chumbley or her assignee, the

plaintiff. Hence, it is here held that the sum which he paid the bank, under the circumstances, should be and it was in law merely a payment to the extent thereof upon his own just obligation, evidenced by the vendor's lien note. That is deemed to be the extent of his rights under the undisputed facts of this case. The Chumbley note being discharged, the $3,840 note likewise became discharged of its incumbrance, entitling the plaintiff to the same.

While, under the facts of this case, the plaintiff was possibly privileged to sue either the bank or the makers of the note, and did by proper alternative pleas present his cause of action against them, nevertheless from the proceedings and the judgment it is evident that he elected to prosecute his suit to judgment against the makers of the notes and as against them he is entitled to his judgment.

The application of the above rules and principles to this record requires that the judgment of the trial court be reversed and rendered in part and undisturbed in part. To that end it is the order and decree of this court that the judgment of the trial court awarding W. A. Farrar judgment for the possession and ownership of the $2,500 vendor's lien note be, and the same is, reversed, and judgment is here rendered that the plaintiff Jos. H. Aynesworth have and recover against the defendant W. A. Farrar the amount of said note, with foreclosure of its lien, less the amount that said Farrar actually paid said bank in the discharge of the Chumbley note on July 16, 1929. In all other respects the judgment remains undisturbed except as to costs. While the bank evidenced considerable confusion in regard to its lawful relation to the collateral notes, yet it appears from the record that the bank substantially succeeded in maintaining the position of impartial stakeholder in regard to the custody of the collateral notes, and since it has tendered them into the trial court and asked that the possession of the same be awarded to the litigants entitled thereto, it is therefore the order of 'this court that all costs in this and the trial court be adjudged equally against the defendants W. A. Farrar and L. E. Parmley, and the sureties on their respective bonds.

As indicated, the judgment of the trial court is reversed and rendered in part, and left undisturbed in part.

HICKMAN, C. J., not sitting.